UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| CIERA NICHOLE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-66-JEM |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 15]. Now before the Court are

Plaintiff's Motion for Judgment on the Pleadings [Doc. 16] and Defendant's Motion for Summary

Judgment [Doc. 20]. Ciera Nichole Smith ("Plaintiff") seeks judicial review of the decision of the

Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the

Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and

**GRANT** the Commissioner's motion.

## I.   PROCEDURAL HISTORY

On August 16, 2019, Plaintiff filed an application for disability insurance benefits pursuant

to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* [Tr. 157], and an application for

supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C.

§ 1381 *et seq.* [*Id.* at 212]. Plaintiff claimed a period of disability that began on December 1, 2015

---

[1]      Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.  *See* 42 U.S.C.
§ 405(g).

[*Id.* at 111, 123]. Her applications were denied initially and upon reconsideration [*Id.* at 122, 157, 158, 211, 212, 229–42]. Plaintiff then requested a hearing before an ALJ [*Id.* at 243–44]. A hearing was held on March 25, 2021 [*Id.* at 70–110]. The ALJ received additional records following the hearing and based on these records found it necessary to have a supplemental hearing [*Id.* at 42]. The supplemental hearing was held on August 10, 2021 [*Id.* at 38–60]. The ALJ then issued his decision on August 25, 2021, finding Plaintiff was not disabled [*Id.* at 12–30]. The Appeals Council denied Plaintiff's request for review on April 20, 2022 [*Id.* at 1–3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on June 14, 2022, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2020.

2. The claimant has not engaged in substantial gainful activity since December 1, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Depression, anxiety, bipolar disorder, somatic symptom disorder, degenerative disc disease, neuropathy, seizure disorder, migraines, cerebrovascular accident (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except frequently climb ramps and stairs but never climb ladders, ropes or scaffolds. The claimant can occasionally balance, and frequently stoop. The claimant should avoid all exposure to unprotected heights, moving mechanical parts, or other workplace hazards. The claimant can be exposed to no more than a moderate noise intensity level with examples including light traffic or a department store, and should not be exposed to bright or flashing lights, bright lights defined as anything brighter than standard indoor ambient lighting. The claimant can perform simple tasks with customary breaks and few changes in a routine work setting. The claimant can have frequent interaction with the general public, coworkers, and supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 13, 1988 and was 27 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 17–30].

3

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

4

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). The Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis:

> 1. If claimant is doing substantial gainful activity, he is not disabled.

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

5

> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), (e), 416.920(a)(4), (e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.     ANALYSIS

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ committed several errors at steps three and four of the sequential analysis [Doc. 17 pp. 13–20]. Plaintiff first argues that the ALJ erred by finding she did meet or medically equal Listing 11.04 or Listing 12.07, as set forth in 20 C.F.R. part 404, subpart P, appendix 1, sections 11.04 and 12.07 [*Id.* at 14–17]. Plaintiff next argues that even if she did not meet or equal a listed

6

impairment, the ALJ's decision is still "not supported by substantial evidence as it does not include all of the uncontradicted impairments of the Plaintiff, particularly the fact that she cannot stand or walk and requires the use of a wheelchair" [*Id.* at 18]. Finally, Plaintiff argues that the ALJ erred by failing to properly weigh her subjective symptoms and fully credit them [*Id.* at 19–20].

For the reasons discussed below, the Court finds that the ALJ's determination that Plaintiff does not meet or medically equal a listed impairment is supported by substantial evidence. The Court further finds that the ALJ applied the correct legal standards in determining Plaintiff's RFC and that this RFC determination is supported by substantial evidence. Plaintiff has therefore failed to state a basis for disturbing the ALJ's decision.

### A.     The Listings of Impairments

Plaintiff argues that the ALJ erred by finding she did not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1 [*Id.* at 14–17]. "[A] a claimant will be found disabled if his impairment meets *or equals* one of the listings in the Listing of Impairments." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citations omitted). "The Listing of Impairments . . . describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Id.* (quoting 20 C.F.R. § 404.1525(a)). "Because the Listings permit a finding of disability based solely on medical evidence (without considering a claimant's vocational profile), the Commissioner applies a heightened evidentiary standard at step three." *Riccota v. Comm'r of Soc. Sec.*, No. 20-cv-1259-TMP, 2022 WL 3045318, at *13 (W.D. Tenn. Aug. 2, 2022) (citing *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 710 (6th Cir. 2013)).

"Each listing specifies 'the objective medical and other findings needed to satisfy the criteria of that listing.'" *Reynolds*, 424 F. App'x at 414 (quoting 20 C.F.R. § 404.1524(c)(3)). "A

7

claimant must satisfy all of the criteria to 'meet' the listing." *Id.* "An impairment that manifests only some of the criteria, no matter how severely, does not qualify." *Riccota*, 2022 WL 3045318, at *13 (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "[A] claimant is also disabled if her impairment is the *medical equivalent* of a listing." *Reynolds*, 424 F. App'x at 414 (citations omitted). An impairment is the medical equivalent of a listing if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). Ultimately, it is a claimant's burden to demonstrate that his impairments meet or medically equal a relevant listing. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

In this case, Plaintiff argues that the ALJ erred by: (1) finding she did not meet Listing 11.04 regarding vascular insults to the brain [Doc. 17 pp. 14–16]; (2) finding she did not meet Listing 12.07 regarding somatic symptom disorders [*Id.* at 16–17]; and (3) finding that she did not medically equal either listing [*Id.* at 17].

### 1. Listing 11.04

Plaintiff argues that the ALJ erred by finding she did not meet Listing 11.04 [*Id.*]. Listing 11.04 states that a claimant should be found to be disabled if they have a "[v]ascular insult to the brain, characterized by:"[2]

> A. Sensory or motor aphasia resulting in ineffective speech or communication . . . persisting for at least 3 consecutive months after the insult; or
>
> B. Disorganization of motor function in two extremities . . . , resulting in an extreme limitation . . . in the ability to stand up from a seated position,

---

[2] "Vascular insult to the brain (cerebrum, cerebellum, or brainstem), commonly referred to as stroke or cerebrovascular accident (CVA), is brain cell death caused by an interruption of blood flow within or leading to the brain, or by a hemorrhage from a ruptured blood vessel or aneurysm in the brain." 20 C.F.R. pt. 404, subpart P, app. 1, § 11.00(I).

8

balance while standing or walking, or use the upper extremities, persisting for at least 3 consecutive months after the insult; or

C. Marked limitation . . . in physical functioning . . . and in one . . . area[] of mental functioning, both persisting for at least 3 consecutive months after the insult[.]

20 C.F.R. pt. 404, subpart P, app. 1, § 11.04.

In determining Plaintiff did not meet a listed impairment in this case, the ALJ acknowledged that he had included Plaintiff's cerebrovascular accident ("CVA") as a severe impairment at step two based on Plaintiff's self-report of a history of a stroke and the acceptance of such history by some clinicians [Tr. 19]. He added the caveat, however, that "[t]here simply is little evidence of any stroke, more particularly a massive stroke, occurring around the time [Plaintiff] reports becoming paralyzed, and there is no corresponding meaningful hospitalization" [*Id.*]. The ALJ also stated that while "claimant may have suffered a stroke, [] there is little evidence to support the acceptance of paralysis resulting therefrom" [*Id.*]. Specifically, the ALJ stated the "record reveals that the only physician to accept the premise that [Plaintiff] has experienced a stroke resulting in paralysis of her lower extremities is . . . Nurse Practitioner Bob Reynolds, who submitted a statement indicating that [Plaintiff] has been confined to a wheelchair since July 2019" [*Id.* (citing Exh. 25F)]. The ALJ found Nurse Practitioner Reynolds' statement was inconsistent with his own treatment records, however, "which indicate [Plaintiff] continued to enjoy 4/5 strength in her extremities until a noted decrease is remarked upon in October and November 2019" and that "his records do not reflect treatment for acute [CVA], nor do they reflect [Plaintiff's] normal August 2019 brain MRI" [*Id.*]. Finally, the ALJ noted that Plaintiff's counsel did not argue that Listing 11.04 applied at the hearing and, instead, argued for Listing 12.07 [*Id.*].

9

Plaintiff argues that she meets Listing 11.04—specifically Listing 11.04B[3]—based on: (1) Nurse Practitioner Reynolds' statement that she needs a wheelchair [Doc. 17 p. 15 (citing Tr. 1529)]; (2) that consulting physician, Robert Blaine, M.D. ("Dr. Blaine"), "did not opine in either of his examinations and evaluations that the Plaintiff did not need a wheelchair" and noted that Plaintiff had no deep tendon reflexes in her extremities [*Id.* (citing Tr. 1388–91, 1393–35)]; and (3) Plaintiff's own testimony that she could not stand out of the wheelchair or walk, but could hold herself up with her arms [*Id.* at 15–16 (citing Tr. 87–88)]. Plaintiff further argues the ALJ erred to the extent he "made no mention of" that part of Listing 11.04 regarding "disorganization of motor function resulting in an extreme limitation in the ability to stand up from a seated position, or balance while standing or walking" and did not make "any findings regarding whether or not [Plaintiff] could stand up from a seated position or maintain balance while standing" [*Id.* at 15–16 (first citing *Reynolds*, 424 F. App'x at 416 (6th Cir. 2011), and then citing *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007))].

The Commissioner responds that Plaintiff's impairments do not satisfy Listing 11.04 because the evidence does not establish that Plaintiff experienced a vascular insult to the brain and, while the Commissioner "gave Plaintiff the benefit of the doubt in including [Plaintiff's cerebrovascular accident] as a severe impairment," he also acknowledged that "the record did not

---

[3]     Plaintiff quotes Listing 11.04B in her opinion and otherwise fails to cite subsections A or C [Doc. 17 pp. 14–16 (quoting 20 C.F.R. pt. 404, subpart P, app. 1, § 11.04(B))]. To the extent Plaintiff's argument could be construed as raising a claim under either subjection A or C, such claims fail because the record does not contain evidence of "[s]ensory or motor aphasia resulting in ineffective speech or communication persisting for at least [three] consecutive months," 20 C.F.R. pt. 404, subpart P, app. 1, § 11.04(A), and, for the reasons discussed hereafter, the evidence does not align with Plaintiff's claim of paralysis such that she does not have a marked limitation in physical functioning. *See id.* at § 11.04(C); *id.* at § 11.00(G)(2)(a) (stating examples of marked limitations in physical functioning include "persistent or intermittent symptoms that affect your abilities to . . . [such things as] standing, balancing, walking").

10

support the existence of any stroke, much less a massive stroke, that could reasonably have caused Plaintiff to have become paralyzed in both legs as she claims" [Doc. 21 pp. 4–5 (citing Tr. 19)]. The Commissioner further notes that the ALJ cited the opinion of Nurse Practitioner Reynolds in his decision, but found that his statement that Plaintiff was confined to a wheelchair was contradicted by his own treatment records [*Id.* at 5 (citing Tr. 19)]. Finally, the Commissioner notes that, "as the ALJ pointed out, Plaintiff's attorney argued at the hearing for the application not of listing 11.04 related to a stroke, but of listing 12.07 for somatic symptom and related disorders" [*Id.* (citing Tr. 19, 44–46)].

Having reviewed the parties' arguments, the record, and applicable authority, the Court finds that the ALJ's conclusion that Plaintiff does not meet Listing 11.04 is supported by substantial evidence. Although the ALJ did not use the exact language contained in Listing 11.04B regarding disorganization of motor functioning, his reasoning makes clear that he did not believe Plaintiff met this element of the listing. Specifically, the ALJ noted that only one physician, Nurse Practitioner Reynolds, accepted Plaintiff's assertion that Plaintiff was paralyzed as a result of her stroke. The ALJ found that this physician's finding was problematic, however, to the extent it was contradicted by his own findings—including that Plaintiff retained 4/5 strength in her extremities months after her alleged stroke—his failure to treat Plaintiff for a cerebrovascular accident, and other evidence in the record—including a normal August 2019 MRI from another portion of the record [Tr. 19 (citing Exhs. 25F, 14F, 16F, 18F, 15F)]. The ALJ's reliance on several findings in the record that discounted the only evidence supporting Plaintiff's allegations of paralysis caused by a cerebrovascular accident provided substantial evidence for his determination that Plaintiff does not meet Listing 11.04. *See Labelle v. Comm'r of Soc. Sec.*, No. 3:20-cv-2644, 2021 WL 8342835, at *8 (N.D. Ohio Dec. 1, 2021) (finding the ALJ's determination that the claimant did

11

not have the necessary disorganization of motor functioning to meet Listing 11.04 was supported by substantial evidence as the ALJ cited a neurological report showing the claimant has only slightly diminished strength in his lower extremities).

While Plaintiff cites evidence on appeal that she alleges shows she does meet Listing 11.04—including the statements of Nurse Practitioner Reynolds, findings of Dr. Blaine, and her own testimony regarding the severity of her impairments—Plaintiff's reliance on this evidence is problematic for several reasons. For one, this Court's review is limited to whether substantial evidence supports the ALJ's decision. So long as such evidence exists—as is the case here—it is irrelevant whether evidence in the record also supports a contrary conclusion. *See Blakley*, 581 F.3d at 406 ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." (internal quotations omitted)). This is especially so when some of the evidence Plaintiff relies on, namely Nurse Practitioner Reynolds' statements, is the same evidence the ALJ considered in his analysis at step three. *See Bialek v. Comm'r of Soc. Sec. Admin.*, No. 20-cv-11508, 2021 WL 2935249, at *3 (E.D. Mich. July 13, 2021) ("The ALJ considered and discussed the very evidence on which Plaintiff relies. The Court cannot reweigh this evidence at this juncture." (citation omitted)).

Furthermore, while the ALJ does not mention Dr. Blaine's report and her own testimony, "[t]he ALJ [is] not required to discuss every piece of medical evidence when the evidence that is considered is substantial and supports the ALJ's ultimate conclusion." *Labelle*, 2021 WL 8342835, at *8; *see Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) ("The ALJ did not err by not spelling out every consideration that went into the step three determination."). In addition, the ALJ did consider this remaining evidence later in his analysis and found that Plaintiff's testimony

12

regarding her symptoms was inconsistent with the record evidence [Tr. 22 ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence")], and that Dr. Blaine's opinions were unpersuasive [*Id.* at 27]. *See Labelle*, 2021 WL 8342835, at *9 ("[T]he other evidence [plaintiff] faults the ALJ for not considering was addressed in detail in the ALJ's discussion of her Step Four findings." (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365–66 (6th Cir. 2014))). For all these reasons, Plaintiff's arguments do not alter the Court's conclusion that the ALJ's determination that Plaintiff does not meet Listing 11.04 is supported by substantial evidence.

Plaintiff also appears to argue that the ALJ did not apply the correct legal standards in analyzing Listing 11.04. She argues the ALJ's analysis was "deficient" because he "made no mention of" the disorganization-of-motor-functioning requirement or findings related to this requirement [Doc. 17 p. 16 (first citing *Reynolds*, 424 F. App'x at 416, and then *Bowen*, 478 F.3d at 746)]. As noted, however, while the ALJ did not expressly use the precise words of the disorganization-of-motor-functioning requirement, he did make findings regarding this element. Specifically, he discounted the only record evidence supporting Plaintiff's claims of paralysis resulting from a CVA and instead relied on other evidence in the record showing neither a CVA or paralysis [Tr. 19 (citing Exhs. 25F, 14F, 16F, 18F, 15F)]. In doing so, the ALJ's decision is distinguishable from that of *Reynolds* and *Bowen*.

In *Bowen*, the Sixth Circuit held that the ALJ erred by failing to address an opinion from one of the claimant's treating psychologists despite the administration's own regulations at the time requiring the ALJ to give good reasons for not relying on a treating physicians' opinion. *Bowen*, 478 F.3d at 746–47. The Sixth Circuit reasoned that "a decision of the Commissioner will

13

not be upheld where the [Social Security Administration] fails to follow its own regulations and whether that error prejudices a claimant." *Id.* at 746. Here, in contrast, Plaintiff has failed to point to any rule by the Commissioner requiring the ALJ to explicitly state every element of a listing that they find a Plaintiff has failed to meet.

*Reynolds* is similarly distinguishable. In that case, the Sixth Circuit remanded the ALJ's decision because "he skipped an entire step of the necessary analysis" by failing to assess altogether whether Plaintiff met any of the relevant listings of impairments. *Reynolds*, 424 F. App'x at 416. The Court held the ALJ's error was not harmless because, by failing to "actually evaluate the evidence, compare it to [the relevant listing], and give an explained conclusion," the court was unable to conduct a "meaningful judicial review" of the decision. *See id.* Here, in contrast, the ALJ did not skip the entire step three analysis and, instead, did evaluate the evidence, compare it to Listing 11.04, and give an explained conclusion. The Court, in turn, has been able to adequately review the ALJ's decision and determine that it is supported by substantial evidence.

The Court therefore finds that the ALJ applied the correct legal standards in determining that Plaintiff did not meet Listing 11.04, his decision is supported by substantial evidence, and Plaintiff has otherwise failed to state a basis to disturb that decision.

### 2. Listing 12.07

Plaintiff next argues the ALJ erred by finding she did not meet Listing 12.07 [Doc. 17 pp. 16–17]. Listing 12.07, regarding somatic symptom and related disorders, requires a claimant to show both "[m]edical documentation of . . . [s]ymptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder" as well as "[e]xtreme limitation of one, or marked limitation of two, of the [four] areas of mental functioning." 20 C.F.R. pt. 404, subpart P, app. 1, § 12.07. The four areas of mental functioning, as known as the

14

"Paragraph B" criteria, include (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* §§ 12.07(B); 12.00(E).[4]

In this case, the ALJ found that "while [Plaintiff's] condition certainly reflects symptoms of altered or voluntary motor function not better explained by a reported [CVA] evidence does not support a finding that [she] experiences marked or extreme limitations in [the four areas of mental functioning]" [Tr. 19]. Rather, the ALJ found only moderate limitations in each of the four areas of mental functioning and that "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied" [*Id.* at 19–21].

On appeal, Plaintiff acknowledges that the ALJ discussed Listing 12.07 and found that she did not have the necessary marked or extreme limitations in the four areas of mental functioning [Doc. 17 p. 17]. She submits, however, "that the inability to stand or walk independently is such an extreme limitation," that it should be found to be sufficient to meet or medically equal Listing 12.07's mental-limitations requirement [*Id.*]. Plaintiff adds that the inability to stand up from a seated position and maintain balance in a standing position or while walking is described as an extreme limitation in regard to the neurological conditions—such as Listing 11.04—and that the same rationale should apply to "Plaintiff's mental limitations as a result of her alleged somatic symptom disorder" [*Id.* (citing 20 C.F.R. pt. 404, subpart P, app. 1, § 11.00(D)(2))].

---

[4]     An "[e]xtreme limitation" in one or more of the areas means the claimant cannot "function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. pt. 404, subpart P, app. 1, § 12.00(F)(2)(e). A "[m]arked limitation" means a claimant's "functioning in [an] area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.* § 12.00(F)(2)(d). A "[m]oderate limitation" means a claimant's "functioning in [an] area independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c).

15

The Commissioner responds that Plaintiff has failed to meet her burden of showing she meets each element of Listing 12.07—in particular, the requirement pertaining to the Paragraph B criteria [Doc. 21 pp. 5–8]. The Commissioner notes that Plaintiff does not challenge any of the ALJ's analysis regarding the four mental functioning areas and, instead, "seems to suggest that perhaps an alleged inability to stand or walk (which . . . the ALJ found inconsistent with evidence in the record) could somehow satisfy" the second requirement of Listing 12.07 [*Id.* at 6]. The Commissioner argues that "[t]his is plainly not the case, however, as the [mental functioning] criteria are unambiguously defined as strictly areas of *mental* functioning" [*Id.* (citing 20 C.F.R. pt. 404, subpart P, app. 1, §§ 12.00E–F, 12.04)].

Having reviewed the parties' arguments, the Court finds that the ALJ's determination that Plaintiff does not meet Listing 12.07 is supported by substantial evidence The ALJ provided a thorough and well-reasoned explanation why Plaintiff only had marked limitations in each of the four mental functioning areas.

In the area of understanding, remembering, or applying information, the ALJ relied on Plaintiff's own statement that she was able to perform some household chores and other functions of daily life, Dr. Steven Lawhon's finding that Plaintiff was able to complete serial seven subtraction tasks, and the fact that she had a Full Scale IQ of 77 [Tr. 20 (citing Exhs. 12E, 17F)].

As to the area of interacting with others, the ALJ cited Plaintiff's statements that she interacted with people on a daily basis and that while she had some instances of "snapping" or being angry at people, several records also indicated she presented as "well appearing" and pleasant at times [*Id.* (citing Exhs. 12E, 3F, 8F, 13F, 14F, 16F, 18F, 20F, 21F)]. As to the area of concentrating, persisting, and maintaining pace, the ALJ cited Plaintiff's statements that she was

able to complete household chores, prepare meals, and follow written instructions as well as her reported ability to complete serial seven subtractions [*Id.* (citing Exh. 12E)].

Finally, as to adapting or managing herself, the ALJ cited treatment records that revealed few, if any, observations of abnormalities in personal hygiene or periods of emotional distress as well as records that showed Plaintiff to be alert, oriented and pleasant on exam with physicians with whom she had previously been unfamiliar [*Id.* at 20–21 (citing Exhs. 12E, 20F)]. The ALJ concluded that "[b]ecause [Plaintiff's] mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied" [*Id.* at 21]. The Court finds that the ALJ's thorough analysis of each of the four areas, which considered Plaintiff's own statements regarding her abilities as well as the medical record evidence that both supported and contradicted her opinions, is supported by substantial evidence. *See, e.g.*, *Kapp v. Comm'r of Soc. Sec.*, No. 2:16-cv-222, 2017 WL 1194492, at *14–16 (S.D. Ohio Mar. 31, 2017) (finding the ALJ's determination that the claimant did not have the necessary limitations in the four areas of mental functioning was supported by substantial evidence as the ALJ properly considered the claimant's statements in conjunction with medical opinion evidence that both supported and contradicted the claimant's statements).

Plaintiff does not challenge the ALJ's reasoning related to these four areas of mental functioning or any of the evidence he relies on. Plaintiff instead asserts that her inability to stand or walk independently is such an extreme limitation that it should be found to be sufficient to meet the mental limitations requirement—particularly when considering that an inability to stand from sitting or maintain balance while standing or walking is an "extreme" limitation for purposes of the neurological listings [Doc. 17 p. 17]. Plaintiff's argument is unpersuasive for several reasons. For one, Plaintiff fails to cite to any authority supporting her argument. In addition, as the

17

Commissioner points out, Plaintiff fails to explain how a severe physical limitation—such as being unable to stand or walk independently—can be used to satisfy a mental functioning limitation. The Court finds this to be especially problematic in a case such as this, where Plaintiff's alleged inability to stand or walk is already accounted for under the first requirement of Listing 12.07, namely, that Plaintiff have symptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder. Finally, even assuming Plaintiff could rely on evidence of her alleged inability to walk to support Listing 12.07's mental-limitations requirement, this Court's review remains limited to whether the evidence the ALJ relied on in concluding that Plaintiff did not meet Listing 12.07 is supported by substantial evidence, not whether evidence exists to support a contrary conclusion. *See Blakley*, 581 F.3d at 406.

For all these reasons, the Court finds that the ALJ's determination that Plaintiff does not meet Listing 12.07 is supported by substantial evidence and that Plaintiff has failed to state a sufficient basis for disturbing that determination.

### 3. Medical Equivalence

Plaintiff also briefly argues that the ALJ erred to the extent he failed to consider her impairments in combination to determine whether she equaled a listed impairment [Doc. 17 p. 17]. Specifically, Plaintiff argues that "[w]hether [her] paralysis was as a result of a physical or mental impairment, it is submitted that the [ALJ] was required to consider all of [her] impairments in combination in determining whether or not [she] equaled a listed impairment" [*Id.* (citing *Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991))]. Plaintiff goes on to argue that "there is no substantial evidence from which the [ALJ] could have found that [she] could do any sustained walking or standing, and the [ALJ] was required to consider whether or not [her] impairments equal either the neurological or mental listings, and failure to do so was error" [*Id.*].

18

In response, the Commissioner argues that Plaintiff must show more than just that her overall functional impact of her combination of impairments is as severe as that of a listed impairment and must instead present medical findings equal in severity to each of a listing's criteria [Doc. 21 pp. 6–7 (quoting *Sullivan*, 493 U.S. at 531)]. The Commissioner argues that Plaintiff has failed to present such findings in this case and that the record also does not contain the necessary prior administrative medical findings, medical expert evidence, or Appeals Council medical report required by Social Security Ruling 17-2p [*Id.* at 7].

Having reviewed the parties' arguments, the Court finds that the ALJ did consider whether Plaintiff's impairments, individually or in combination, equaled Listing 11.04 or Listing 12.07. The ALJ stated as part of his step-three findings, "[Plaintiff] does not have an impairment or combination of impairments that . . . medically equals the severity of one of the listed impairments" [Tr. 18]. The ALJ then addressed each of Plaintiff's impairments in his decision and analyzed why, based on the record evidence, these impairments were insufficient to medically equal the relevant listings [*Id.* at 18–21]. The record shows that the ALJ considered Plaintiff's impairments in combination in determining whether Plaintiff equaled the relevant listings given his statement that he considered the impairments in combination, his statement that he reviewed the entire record, and his analysis of Plaintiff's impairments individually with accompanying citations to evidence from throughout the record. *See Kolar v. Comm'r of Soc. Sec.*, No. 5:21-CV-01490-JRA, 2022 WL 5250219, at *15 (N.D. Ohio Sept. 15, 2022) ("'[A]n ALJ's finding that a claimant's combination of impairments (plural) did not meet or equal the Listings is sufficient to show that the ALJ had considered the effect of the combination of impairments[,]' so long as the ALJ 'conducted sufficient analyses of each of the claimant['s] impairments after carefully considering the entire record.'" (quoting *Ridge v. Barnhart*, 232 F. Supp. 2d 775, 789 (N.D. Ohio 2002))),

19

*report and recommendation adopted*, No. 5:21CV1490, 2022 WL 5243038 (N.D. Ohio Oct. 6, 2022).

The Court further finds that the ALJ's determination that Plaintiff's impairments did not medically equal a listed impairment, when considered individually or in combination, is supported by substantial evidence. "For a claimant to qualify for benefits by showing that [her] . . . combination of impairments[] is 'equivalent' to a listed impairment, [she] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531 (citing 20 C.F.R. § 416.926(a)). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of [her] . . . combination of impairments is as severe as that of a listed impairment." *Id.* at 531–32. Furthermore, "[t]o make a finding of medical equivalence, an ALJ must have either: 1) a prior administrative finding from an agency doctor that supports the finding of medical equivalence, or 2) medical expert evidence; or 3) a report from the appeals council medical staff to support the finding of equivalence." *See Strittmatter v. Kijakazi*, No. 5:22-CV-00692, 2023 WL 207907, at *6 (N.D. Ohio Jan. 17, 2023) (citing Social Security Ruling 17-2p)).

In briefly arguing that she should be found to have medically equaled a listed impairment, Plaintiff fails to cite any medical findings or medical expert evidence from the record that supports her assertion. Even if the Court assumes that Plaintiff is relying on Nurse Practitioner Reynolds' statements, Dr. Blaine's opinion, and her own testimony regarding her alleged lower-extremity paralysis, the Court finds this evidence insufficient to the extent the ALJ already considered this evidence in his decision and appropriately found that, while relevant, it was insufficient to meet each of the requirements of Listing 11.04 and Listing 12.07. Plaintiff fails to provide any

explanation as to how this evidence would be insufficient to meet the relevant listing but would be sufficient to medically equal them.

Instead of citing relevant medical findings or expert evidence, Plaintiff argues that regardless of the cause of her paralysis—whether physical or mental—the fact remains that she is unable to do any sustained walking or standing. However, this argument focuses on the functional impact of Plaintiff's impairments and, as noted above, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of [her] . . . combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531–32. The Court therefore finds that the ALJ properly considered whether Plaintiff's combination of impairments medically equaled any of the relevant listings and that his determination that she did not medically equal any of the listings is supported by substantial evidence.

## B.  The ALJ's RFC Determination

Plaintiff's remaining arguments relate to the ALJ's residual functional capacity determination. A claimant's "residual functional capacity is the most [they] can still do despite [their] limitations." 20 C.F.R. § 416.945(a)(1). "RFC is an assessment of an individual's ability to do sustained work-related physician and mental activities in a work setting on a regular and continuing basis" meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." Soc. Sec. Ruling 96-08p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996) ("SSR 96-8p"); *see also Stewart v. Comm'r of Soc. Sec.*, 811 F. App'x 349, 355 (6th Cir. 2020) (defining RFC based on SSR 96-8p).

In this case, the ALJ found:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except frequently climb ramps and stairs but never climb ladders, ropes or scaffolds. The claimant

21

can occasionally balance, and frequently stoop. The claimant should avoid all exposure to unprotected heights, moving mechanical parts, or other workplace hazards. The claimant can be exposed to no more than a moderate noise intensity level with examples including light traffic or a department store, and should not be exposed to bright or flashing lights, bright lights defined as anything brighter than standard indoor ambient lighting. The claimant can perform simple tasks with customary breaks and few changes in a routine work setting. The claimant can have frequent interaction with the general public, coworkers, and supervisors.

[Tr. 21]. Along with these findings, the ALJ assessed Plaintiff's symptoms, including the extent her statements about her symptoms were consistent with the record [*Id.* at 21–22]; documented Plaintiff's medical history from February 2016 onward based on the records in her file [*Id.* at 22–26]; provided his rationale for the limitations he included in Plaintiff's RFC [*Id.* at 26–27]; and assessed the persuasiveness of the relevant medical opinions and prior administrative medical findings [*Id.* at 27–28].

Plaintiff raises two challenges on appeal as to how the ALJ erred when determining her RFC. First, she argues that the ALJ's determination that Plaintiff could perform other work which exists in the national economy is not supported by substantial evidence because "it does not include all of the uncontradicted impairments of the Plaintiff, particularly the fact that she cannot stand or walk and requires the use of a wheelchair" [Doc. 17 pp. 18–19].[5] Second, Plaintiff argues that the ALJ erred by failing to properly weigh her symptoms pursuant to Social Security Ruling 16-3p in

---

[5]      While Plaintiff challenges the ALJ's determination at step five that there are sufficient jobs in the national economy that Plaintiff can perform, to the extent she argues the ALJ did not include a standing-walking limitation in Plaintiff's functional abilities, Plaintiff's argument is a challenge to the ALJ's RFC determination at step four. *See Childress v. Comm'r of Soc. Sec.*, No. 2:14-cv-12399, 2015 WL 5752443, at *12 (E.D. Mich. June 24, 2015) (finding that while the plaintiff "appears to challenge the ALJ's Step 5 determination . . . , in substance, [she] challenges the ALJ's Step 4 finding" because she argues the ALJ should have found she requires use of a cane while standing).

that he failed to fully credit her symptoms despite evidence in the record supporting these symptoms [*Id.* at 19–20]. The Court will address each argument in turn.

### 1. The ALJ's Opined Limitations

Plaintiff argues that the ALJ's RFC determination "does not include all of the uncontradicted impairments of the Plaintiff, particularly the fact that she cannot stand or walk and requires the use of a wheelchair" [*Id.* at 18]. Plaintiff submits that the ALJ "made no findings as to how much [she] could allegedly stand or walk" and that this is problematic because she "requires the use of a wheelchair, and that wheelchair negates any ability to perform sedentary work as testified to by the vocational expert" [*Id.* at 19]. Plaintiff also cites to evidence that she asserts supports her position, including both Nurse Practitioner Reynolds' statement that Plaintiff was confined to a wheelchair and Dr. Blaine's opinion to the extent it "does not say that the Plaintiff does not need a wheelchair or that she can ambulate effectively without one" [*Id.* at 18–19 (citing Tr. 1529, 1388–81, 1393–95)].

In response, the Commissioner argues that Plaintiff "fails to show that any reasonable factfinder was compelled to assess greater limitations than the ALJ included in the RFC" as "substantial evidence supports the ALJ's conclusion that Plaintiff retrained the RFC to perform a range of simple sedentary work"[Doc. 21 p. 8 (citing Tr. 21–28)]. The Commissioner refutes Plaintiff's assertion that the ALJ made no findings as to how much she could allegedly stand or walk, arguing that "the ALJ found Plaintiff capable of performing jobs where 'walking and standing are required occasionally'" to the extent he found Plaintiff capable of performing "sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a)" [*Id.* (citing Tr. 21; 20 C.F.R. §§ 404.1567(a), 416.967(a))]. The Commissioner further asserts that "the ALJ considered the record as a whole and explained how substantial evidence supported the restrictions he

23

assessed," that it is Plaintiff's burden to establish disability, and that while "Plaintiff may disagree

with the ALJ's conclusions, her mere disagreement is insufficient to warrant remand" [*Id.* at 12].

Having reviewed the parties' arguments, the record, and applicable authority, the Court

finds that the ALJ did include a limitation related to Plaintiff's ability to stand or walk in his RFC

determination, that this RFC determination is supported by substantial evidence, and that the ALJ

did not otherwise err by failing to assess greater limitations.

The ALJ did discuss Plaintiff's alleged inability to stand or walk. Specifically, the ALJ

stated as part of his step-four analysis:

> After reviewing the relevant evidence, the undersigned finds the claimant
> remains able to perform the demands of the sedentary exertional level. The
> undersigned notes that the record contains many inconsistencies. The
> claimant has reported that she has been largely paralyzed in her lower
> extremities since experiencing a stroke in July 2019 (Hearing Testimony).
> However, imaging studies performed the next month revealed no acute
> intracranial event at all.
>
> Further, the claimant's primary care physician indicated the claimant
> retained 4/5 strength about her extremities during office visits in August and
> September 2019, and continued to note the claimant was moving all limbs
> well during office visits in 2020 and 2021 (Exhibits 14F, 16F, 18F, 22F).
> Moreover, in treatment notes that pre-date the claimant's alleged stroke, it
> was indicated that the claimant reported maintaining good energy levels by
> walking, exercising, hiking, and biking, despite a history of severe back pain
> (Exhibit 13F, pp 23). Nevertheless, given the claimant's demonstrated
> peripheral neuropathy, history of treatment for back pain, and seizures, the
> undersigned finds the claimant is limited to the sedentary exertional level,
> as the greater standing, walking, lifting, and carrying demands of the light
> exertional level would be expected to exacerbate the claimant's back pain
> and further fatigue the claimant.

[Tr. 26]. The ALJ's last sentence, in particular, directly addresses Plaintiff's ability to stand or

walk to the extent he limited Plaintiff to sedentary work. The ALJ, in turn, defined what he meant

by sedentary work to the extent he expressly stated, "the claimant has the residual functional

capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)" [*Id.* at 21].

24

Sections 404.1567(a) and 416.967(a), in turn, define sedentary work as "one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties" and, further, that "[j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967. The Court therefore finds that the ALJ did make a finding as to how much Plaintiff could stand or walk, namely, that she could stand or walk "a certain amount," or "occasionally" but no more than that.

The ALJ imposed a standing-walking limitation as part of his RFC determination, and his limitation is supported by substantial evidence. In evaluating Plaintiff's impairments and her alleged inability to stand or walk, the ALJ cited to evidence from the record that refuted placing greater limitations on Plaintiff, including imaging studies that revealed no acute intracranial events as well as several reports from Plaintiff's primary care provider indicating she "was moving all limbs well during office visits in 2020 and 2021" [Tr. 26 (citing Exhs. 14F, 16F, 18F, 22F)]. The ALJ also addressed Plaintiff's ability to stand or walk when discussing the persuasiveness of Dr. Blaine's opinion, as he stated that, "[he] notes that opinions that the claimant is unable to stand walk at all are incongruent with observations that the claimant remained able to move her limbs well that persisted throughout the relevant period . . . , unsupported by the imaging studies of record and the claimant's reports of activities during the relevant period" [Id. at 27]. The Court therefore finds that the ALJ provided substantial evidence for his determination that Plaintiff did not have greater limitations in her ability to walk or stand, as he recognized there was record evidence that might support greater limitations in Plaintiff's ability to stand or walk, but found such evidence was contradicted by both the remaining objective medical evidence and Plaintiff's own statements regarding her ability to perform daily activities.

25

While Plaintiff argues that the ALJ's RFC determination regarding her ability to stand or walk is not supported by the record, her argument is unpersuasive to the extent she argues there is evidence in the record that supports a contrary conclusion. *See Blakley*, 581 F.3d at 406. The only evidence Plaintiff cites in support of her argument are the findings from Dr. Blaine's consultative examination opinion and statements by Nurse Practitioner Reynolds that Plaintiff was confined to a wheelchair [Doc. 17 pp. 18–19 (citing Tr. 1529, 1388–91, 1393–95)]. As noted, however, the ALJ considered this evidence as part of his RFC determination and found it unpersuasive [Tr. 25–26 (detailing the findings of Dr. Blaine); *id.* at 27 (finding Dr. Blaine's opinion unpersuasive); *id.* at 28 (noting Nurse Practitioner Reynolds' statement that Plaintiff was confined to a wheelchair but detailing how that statement was inconsistent with the record evidence)]. "The Court cannot reweigh this evidence [the ALJ already considered] at this juncture." *See Bialek*, 2021 WL 2935249, at *3 (citation omitted).

In the absence of any further argument by Plaintiff, the Court finds that Plaintiff has failed to provide a sufficient rationale for overturning the ALJ's RFC determination that Plaintiff retained the ability to perform sedentary work, including standing and walking "occasionally"—a determination the Court finds is supported by substantial evidence in the record.

### 2. The ALJ's Assessment of Plaintiff's Symptoms

Plaintiff argues the ALJ erred when determining her RFC by failing to properly weigh her symptoms pursuant to Social Security Ruling 16-3p [Doc. 17 pp. 19–20]. A claimant's symptoms are one of several factors an ALJ considers when making an RFC determination. 20 C.F.R. § 404.1545(a)(3). The Social Security Administration "define[s] a symptom as the individual's own description or statement of his or her physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017). "[I]f an individual alleges impairment-related symptoms, [the

26

SSA] evaluate[s] those symptoms using a two-step process." *Id.* (20 C.F.R. §§ 404.1529, 416.929). First, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce their alleged symptoms. *Id.* at *3. Second, the ALJ evaluates the intensity and persistence of the claimant's symptoms and determines the extent to which their symptoms limit their ability to perform work-related activities. *Id.* at *4. At step two, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The ALJ also considers the factors set forth in 20 C.F.R. sections 404.1529(c)(3) and 416.929(c)(3), including:

> 1. Daily activities;
>
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7–8 (citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)). The decision need not contain discussion and citations as to every possible factor to be sufficiently specific. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004).

An ALJ's determination regarding the extent to which a claimant's symptoms limit their ability to perform work-related activities is afforded "great weight and deference," and courts "are limited to evaluating whether the ALJ's explanations for partially discrediting a claimant's testimony are reasonable and supported by substantial evidence in the record."[6] *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 649 (6th Cir. 2013) (cleaned up) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003)). Factual determinations are the domain of the ALJ, and "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.]" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

As part of his RFC determination in this case, the ALJ summarized Plaintiff's testimony from the administrative hearings, including her "[testimony] that she experience a stroke in July 2019, and subsequently was unable to feel or move her legs" [Tr. 22]. The ALJ then found:

> After careful consideration of the evidence, . . . the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

---

[6]     SSR 16-3p removed the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (citation omitted); *see also Barber v. Kijakazi*, No. 1:20-0064, 2022 WL 209268, at *6 (M.D. Tenn. Jan. 24, 2022) (explaining that although the Commissioner removed the term "credibility" when SSR 16-3p was implemented, "there appears to be no substantive change in the ALJ's analysis and nothing to indicate that case law pertaining to credibility evaluations" has been abrogated (citation omitted)), *report and recommendation adopted*, 2022 WL 853208 (M.D. Tenn. Mar. 22, 2022).

consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

[*Id.*]. Specifically, the ALJ found "[Plaintiff]s statements about the intensity, persistence, and limiting effects of . . . her symptoms . . . are inconsistent with [her] reported activities during the relevant period, the imaging studies of record, treatment notes from [her] physicians, and the record as a whole" [*Id.*]. The ALJ then spent several pages detailing Plaintiff's medical reports, her own reported activities of daily living, and the extent to which these reports and statements were consistent with various functional limitations [*Id.* at 22–27].

Plaintiff argues that "the [ALJ] failed to properly weigh [her] symptoms pursuant to Social Security Ruling 16-3p" because "those symptoms are amply supported by [her] treatment for her complaints" [Doc. 17 p. 19]. Specifically, Plaintiff cites to the fact that "Dr. Blaine noted that she had no deep tendon reflexes and he does not opine that [] Plaintiff can walk" [*Id.* at 19–20 (citing Tr. 1390, 1395)]. She also notes that she "was prescribed a wheelchair by [Nurse Practitioner] Reynolds in August 2019" and that he "opined that she had no movement or sensation in her bilateral lower extremities and that she had 1/5 or less strength or sensation which was decreased and [] needed an electronic wheelchair" [*Id.* at 20 (citing Tr. 1279, 1373, 1374)]. Plaintiff argues that "[a]ll of this medical evidence supports the Plaintiff's symptoms, and it was error for the [ALJ] to not fully credit those symptoms in view of the medical evidence" [*Id.*].

The Commissioner responds that "the ALJ considered various factors for evaluating the consistency of Plaintiff's complaints with the evidence" including the objective evidence, Plaintiff's course of treatment, and her own statements about her symptoms [Doc. 21 pp. 8–11]. The Commissioner asserts that "[t]he evaluation of [Plaintiff's] subjective complaints rests with the ALJ and should not be disturbed absent compelling reasons" and that [a]lthough Plaintiff may

29

understandably wish the ALJ had evaluated the evidence differently, her mere disagreement with the ALJ's conclusions does not warrant remand" [*Id.* at 11].

The Court finds that the ALJ applied the correct legal standards in evaluating Plaintiff's symptoms and that his determination that Plaintiff's statements regarding her symptoms were not entirely consistent with the medical evidence is supported by substantial evidence. The ALJ analyzed "the objective medical evidence . . . [and] statements and other information provided by medical sources." SSR 16-3p, 2017 WL 5180304, *4. Specifically, the ALJ cited records indicating that Plaintiff's February 2016 images and testing on two separate occasions were negative despite Plaintiff complaining of seizures [Tr. 22 (citing Exhs. 7F, 6F)]; that her April 2017 EEG was negative, despite Plaintiff asserting she previously experienced a stroke [*Id.* at 23 (citing Exh. 11F)]; and that Nurse Practitioner Reynolds opined in August 2019 that Plaintiff's strength was rated at 4/5 and she continued to move her limps well despite having reported lower extremity paralysis [*Id.* at 23]. The ALJ also considered information from the factors contained in 20 C.F.R. sections 404.1529(c)(3) and 416.929(c)(3), including Plaintiff's reported daily activities. Specifically, the ALJ noted:

> In relating her activities of daily living, the claimant reported she gets up between 3:30 and 4:00 a.m. and goes to bed between 11:30 and 12:00. She reported that she cooks and washes dishes, but tires easily, and mainly fixes microwaved foods. She reported having a male friend that did her grocery shopping for her. She noted doing laundry a couple times a month, and indicated that she watches television.

[*Id.* at 24–25].

Plaintiff does not challenge the ALJ's analysis and, instead, broadly asserts that the ALJ failed to properly weigh her symptoms and not fully credit them despite being "amply supported" by the treatment records [Doc. 17 p. 19]. While Plaintiff does not specify which symptoms the

30

ALJ failed to properly weigh or credit, it seems that Plaintiff is referring to her statements about her inability to stand or walk. The ALJ, however, expressly addressed these symptoms in his opinion, stating,

> The undersigned notes that the record contains many inconsistencies. The claimant has reported that she has been largely paralyzed in her lower extremities since experiencing a stroke in July 2019 (Hearing Testimony). However, imaging studies performed the next month revealed no acute intracranial event at all.
>
> Further, the claimant's primary care physician indicated the claimant retained 4/5 strength about her extremities during office visits in August and September 2019, and continued to note the claimant was moving all limbs well during office visits in 2020 and 2021 (Exhibits 14F, 16F, 18F, 22F).

[Tr. 26]. The Court finds that the ALJ's determination that Plaintiff's symptoms, including her allegations that she is unable to stand or walk, were not entirely consistent with the record and therefore should be afforded less weight is supported by substantial evidence to the extent the ALJ cited to several objective medical records over a several-year span that contradicted her statements. *See Schmiedebusch*, 536 F. App'x at 649 (reviewing courts "are limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record").

Plaintiff fails to provide a sufficient rationale to disturb the ALJ's determination, which is to be afforded "great weight and deference." *Id.* Plaintiff's argument consists of pointing to other evidence in the record—again, Dr. Blaine's findings and Nurse Practitioner Reynolds' statement that she was confined to a wheelchair—that support a contrary conclusion. Such evidence is irrelevant to the Court's review, however, especially to the extent the ALJ already considered and discounted the exact evidence upon which Plaintiff now relies. *See Blakley*, 581 F.3d at 406; *Bialek*, 2021 WL 2935249, at *3.

31

The Court therefore finds that the ALJ applied the correct legal standards in weighing Plaintiff's symptoms, that his determination regarding these symptoms is supported by substantial evidence, and that Plaintiff has otherwise failed to state a sufficient reason to disturb that decision. The Court therefore denies Plaintiff's final basis for remand.

## VI.     CONCLUSION

Based on the foregoing, the Court will **DENY** Plaintiff's Motion for Judgment on the Pleadings [**Doc. 16**], and **GRANT** the Commissioner's Motion for Summary Judgment [**Doc. 20**]. The Court **AFFIRMS** the decision of the Commissioner and **DIRECTS** the Clerk of Court to close this case.

ORDER ACCORDINGLY.


Jill E. McCook
United States Magistrate Judge

32